F. Richard ROHDE, Plaintiff–Appellant,

v.

**TRW REAL ESTATE LOAN SERVICES, INC., et al., Defendants–Respondents.**

No. 59530.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 24, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 10, 1992.

Case Transferred to Supreme Court March 24, 1992.

Case Retransferred to Court of Appeals Sept. 15, 1992.

Original Opinion Reinstated Sept. 28, 1992.

Dennis K. Hoffert, Herzog, Ahlquist, Kanter & Hoffert, St. Louis, for plaintiff-appellant.

William I. Rutherford, Brown & James, P.C., St. Louis, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

## PRELIMINARY STATEMENT

This appeal is from an order entered by the Circuit Court of the City of St. Louis, on the counterclaim of respondent TRW Real Estate Loan Services, Inc. (hereinafter referred to as TRW), granting TRW a "Mandatory Injunction and Judgment" requiring appellant/Rohde to turn over to TRW, certain voluminous title insurance and real estate appraisal business records, which appellant had in his possession, pursuant to a working agreement between appellant and TRW's licensee, Real Estate Loan Services of Missouri, Inc.

## BACKGROUND INFORMATION

TRW's predecessor Record Data International, Inc. (hereinafter referred to as RDI), had developed a system to make fast and accurate searches of public records pertaining to real estate. RDI franchised these services nationwide by means of license agreements that granted specific territories to licensees.[1] The RDI license for the eastern portion of Missouri was purchased by respondent/Walter Agee in 1976.

Mr. Agee and co-respondent Sylvia Orman formed a Missouri Corporation, Record Data of Missouri, Inc. The name of the company was later changed to Real Estate Loan Services of Missouri, Inc., (hereinafter referred to as RELS), with Agee and Orman remaining as the only shareholders.

In 1981, appellant was hired by Agee as a salaried employee. In November 1982, appellant and respondents Agee and Orman, entered into an "Agreement" whereby appellant was to receive 95% of all commissions from the eastern Missouri operations of RELS, as well as be responsible for paying all taxes and leases in connection with the business.

On or about September 14, 1990, Agee, for himself and RELS, entered into a termination agreement with TRW, which memorialized the surrender of the license agreements to TRW.[2] Under the terms of the termination agreement, Agee was to transfer the records to TRW. The records,[3] which constitute the heart of the litigation, are well in excess of one hundred thousand.

## PROCEDURAL HISTORY

The chronological sequence of events culminating in the court's order granting a mandatory injunction, are initially set forth below. On November 7, 1990, appellant filed his petition for declaratory relief, petition for injunctive relief and temporary restraining order, and petition for preliminary injunction. Appellant was attempting to restrain TRW from removing the records from the premises located at South Kings Highway. Appellant withdrew his request for a temporary restraining order. Subsequently, the court issued an "Order to Show Cause Why Preliminary Injunction Should Not Be Granted," setting a hearing for December 11, 1990.

After being locked out of access to the records by appellant, TRW appeared before the court on November 9, 1990 and submitted its counterclaim. Appellant received notice and was present. Appellant advised the court that TRW was not authorized to conduct business in the State of Missouri and the proceedings were termi-

---

1. TRW acquired Record Data International, Inc., in 1985. TRW proceeded to function as the "Licensor" (all of the copyrighted forms, stationary, etc. carry the name "TRW"), and Real Estate Loan Services of Missouri functioned as the "Licensee".

2. Appellant was neither a party to the original license agreement between TRW's predecessor and Agee, nor a party to the termination agreement between TRW and Agee.

3. The records, prior to the Mandatory Injunction issued by the Court, were in appellant's possession. Said books, records and documents were located at 2632 South Kings Highway, on the premises leased by appellant.

nated without an order. Another hearing was set for November 15, 1990.

At the November 15,[4] hearing TRW, now registered to do business in Missouri, formally filed its counterclaim for temporary restraining order, preliminary injunction, replevin and damages. Although no substantive order was entered, TRW and appellant agreed to mutual access to the records.

On November 20, 1990, TRW's request for temporary restraining order or alternate request for replevin was taken up by the court.

> Appellant objected at the outset of the proceeding for the reasons that: since none of the Respondents RELS, Agee or Orman had been served with process nor were any of them before the Court the Court was without jurisdiction because necessary parties were not present; Appellant had not received notice that the replevin action was to be taken up for consideration of TRW's temporary restraining order request. The Court announced that it would proceed in the matter.

At the conclusion of the presentation of the evidence, the Court stated: ·

> The Court: ... They can get an entry of appearance and an answer filed between now and the 13th. I'm going to give you to the 13th of December to get prepared to put on anything you want. I will rule on the 13th.
>
> In the meantime, I will enter an interim order that none of those records be destroyed and that the opponent here, TRW, be given free access to themselves to search the records on his premises pending from now to the 13th of December.

On November 29, 1990, appellant received a "Separate Joint Answer of Defendants Real Estate Loan Services of Missouri, Inc., Walter H. Agee and Sylvia J. Orman to Plaintiffs Petition."

On November 30, 1990, appellant filed his application for change of judge. TRW objected to the application and filed its memorandum in opposition. The court summarily denied appellant's motion because half a hearing was already completed and the court was to conclude the case on December 13th.

On December 4, 1990, appellant filed his motion for continuance. Appellant's argument was that he had not been permitted discovery. However, at the time the motion was filed, appellant had not requested discovery either formally or informally.

On December 6, 1990 TRW filed its entry of appearance and "Separate Answer of Defendant TRW Real Estate Loan Services, Inc." Appellant also filed his first request for production of documents along with his first interrogatories to respondents.

The court heard appellant's motion for continuance and denied the same on December 10, 1990. On December 11, 1990, appellant filed his petition for writ of prohibition and suggestions in support thereof. The writ was denied on December 12, 1990.

The court took up respondent's injunction request on December 14, 1990. Appellant did not introduce any evidence at this hearing and voluntarily dismissed the remainder of his cause. The court entered a "Mandatory Injunction and Judgment" granting the relief sought by TRW's injunction petition that certain business records and other business property be delivered to TRW from appellant's possession. On December 19, 1990, the court entered an "Amended Mandatory Injunction and Judgment." This appeal follows.

## ISSUES ON APPEAL

Appellant raises three points on appeal. Prong A of his first point alleges trial court error in granting the Mandatory Injunction because the evidence does not support its issuance, there was no showing of irreparable harm and the balance of equities do not favor the issuance of an injunction. Prong B asserts that the hearing held on the permanent injunction was not in compliance with Rule 92.02(a)(2) Missouri Rules of Civil Procedure. Appellant's second point as-

---

4. The record on appeal does not incorporate the proceeding before the court on November 15.

serts reversible error of the trial court in denying his application to disqualify the court under Rule 51.05, Missouri Rules of Civil Procedure. The third point on appeal alleges trial court error in failing to grant appellant's request for a continuance in order to permit discovery.

We reverse and remand because we find reversible error committed by the trial court in denying appellant's application to disqualify the judge pursuant to Rule 51.-05. Discussion of appellant's other points is therefor, rendered nugatory.

### DISCUSSION—RULE 51.05(b)

Appellant filed his request for change of judge on November 30, 1990, pursuant to the provisions of Rule 51.05(b). The Rule provides in pertinent part as follows:

> The application must be filed within thirty days after the answer is due to be filed if the trial judge is designated at the time the answer is due. If no answer is required to be filed, the application must be filed no later than thirty days after the filing of the civil action ... If the designation of the trial judge occurs less than thirty days before trial, the application must be filed prior to commencement of any proceeding on the record.

■ A couple of preliminary observations are in order. At the time of the November 20 proceeding three of the parties, namely, Agee, Orman and RELS, were not before the court, and therefor the court lacked jurisdiction over them. *Krug v. Abel*, 716 S.W.2d 17, 20 (Mo.App.1986). Appellant's petition was filed on November 7, 1990 and answers were due in the normal course of events thirty days after service, Rule 55.25. Respondents Agee, Orman and RELS were not served until November 21, 1990. Therefor, no answer was due from the respondents until December 21, 1990. However, respondents Agee, Orman and RELS submitted to the court's jurisdiction on November 28, 1990 by filing their answers to appellant's pleadings. "In absence of proof that service of process was obtained in manner and form pre-

scribed by statute, court lacks power to determine even whether it may assert jurisdiction over defendant's person, unless defendant has consented or waived his objections to personal jurisdiction". *Abel, supra*, at 18. *See also Industrial Personnel Corp. v. Corcoran*, 643 S.W.2d 816 (Mo. App.1981).

Because appellant's petition for declaratory judgment was still pending before the court, appellant voiced his objection to the court commencing any proceeding until all parties were before the court. TRW voluntarily entered it's appearance on November 20, and because Agee[5] and Adams had come from Memphis and California respectively, the court proceeded to hear their testimony, delineating the proceeding of November 20, as one based on TRW's counterclaim for temporary restraining order or in the alternate for replevin.

But, it was not until November 28, that all parties were before the court. Appellant filed his application for change of judge on November 30. Thus, appellant's application was timely under the provisions of Rule 51.05(b) where *"the application must be filed within thirty days after the answer is due to be filed if the trial judge is designated at the time the answer is due...."* Furthermore, "... whether the disqualification of a judge hinges on a statute or on a rule, we adhere to the liberal construction of that statute or rule in favor of the right to disqualify. A liberal construction is necessary if we wish to promote and maintain public confidence in the judicial system." *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 695 (Mo.App.1990). (Citations omitted).

■ We now ponder on the vexatious query of when the trial judge was designated and when trial was to occur for purposes of Rule 51.05. At this juncture, we re-emphasize that the proceeding before the court on November 20, was of importance in ascertaining whether "trial" had commenced.

Appellant cites to *Reproductive Health Services, Inc. v. Lee*, 660 S.W.2d 330 (Mo.

---

**5.** Agee appeared as a witness at the November 20 proceeding and not as a party to the suit.

App.1983) where the court concluded that "... the Supreme Court in employing the term "trial" in Rule 51.05(b) intended "trial on the merits" and did not intend to encompass in that term a show cause hearing on whether a temporary injunction should be granted". *Id.,* at 347. *See also, Harmon v. Schultz,* 723 S.W.2d 945, 947 (Mo.App. 1987) where the court in footnote 3, supports the interpretation of "trial" suggested by the *Reproductive Health Services* court. Appellant asserts that the November 20 proceeding falls outside the ambit of "trial on the merits" as advocated by the *Reproductive Health Services* court.

Consequently, appellant stresses that this court should focus it's attention in determining whether the designation of the trial judge, that is, the judge who would hear the case on the merits, occurred less than thirty days before trial on the merits.

Respondents characterize the November 20 proceeding as a trial, citing to *State ex rel. Darling & Company v. Billings,* 435 S.W.2d 377, 380 (Mo. banc 1968) in support of their position that an application for change of judge filed after a trial has started is untimely. In addition, relying on *Jenkins v. Andrews,* 526 S.W.2d 369 (Mo. App.1975), respondents urge that "... the right to disqualify a judge is not to be employed 'to produce inconvenience and absurdity'." *Id.,* at 372. (Emphasis in original).

After examining the record, this court concludes that the proceeding before the court on November 20 was not a "trial on the merits". At oral argument, counsel for respondent TRW stated that the key inquiry should be whether there was a "proceeding on the record." [6] In his brief, appellant admits that the November 20 proceeding was a "proceeding on the record." Appellant disagrees with characterizing the proceeding as a "trial on the merits" for purposes of Rule 51.05(b). Appellant indicated at oral argument that Agee's appearance at the November 20 proceeding was a mystery to him.

**6.** Counsel implies that because *Reproductive Health Services, Inc. v. Lee,* 660 S.W.2d 330 (Mo.App.1983) was decided when the former

To return to the question of the designation of the trial judge. As demonstrated by the record, the only matter noticed for hearing on November 20 was appellant's show cause order for December 11, 1990. It was not until the conclusion of the November 20 proceeding that the court set a date for trial on the merits and designated the trial judge. The designation on November 20, occurred less than thirty days before the trial, scheduled for December 11. Consequently, appellant's application for change of judge was timely pursuant to Rule 51.05(b).

Judgment reversed and the cause is remanded with directions for the court to set aside its order denying appellant's request for disqualification, to sustain said request, and to assign the cause for a new trial on the merits.

STEPHAN and CRIST, JJ., concur.

Rule 92 (92.01–92.20) Injunction, was in effect, the result of the *Reproductive* court is inapplicable to the case *sub judice.* We disagree.